**FIDELITY TRUST CO. v. CHADD et al.**

No. 20533. Opinion Filed March 8, 1932.

Rehearing Denied April 26, 1932.

Roddie & Harrison, for plaintiff in error.

R. Donald Slee, for defendants in error.

KORNEGAY, J. This is a proceeding in error to review the action of the district court of Pontotoc county in rendering a judgment against the plaintiff in error for $130, the expense incurred by a real estate agent, the defendant in error, $10, and commission on making a real estate sale, $120.

The secretary of the corporation, Mr. Wallace, listed the property for sale with the defendant in error, as well as another real estate agent at Ada. The defendant in error succeeded in getting a purchaser ready, willing, and able to buy the property, and prepared a written contract of sale that was signed by that purchaser, who put up $1,400 and was to pay the balance according to the contract as soon as the deal could be closed, and forwarded the contract to plaintiff in error at its office at Fort Worth, Tex., for execution. The phone charges occurred in phoning to that office, and also to Oklahoma City, where it had an office in charge of Mr. H. A. Witliff, who was a witness in the case, and who conducted some of the correspondence on behalf of the company with the defendant in error, and to whom the Fort Worth office forwarded the contract sent to it by defendant in error.

The defense is that the authority of the agent who secured the buyer was not in writing, and that the agent who listed the property with him had no authority to sell the property. The testimony shows, however, that the real reason for not completing the deal was that the company did not want to lose any more money than possible on the property. The listing with the real estate agent was made by the secretary and treasurer, who left with the real estate agent a card so showing and giving the phone number at Fort Worth.

After getting a contract signed by the purchaser on the terms of the listing, it was forwarded by the agent to the Fort Worth office of the company by registered mail, and was promptly received by the company, it being forwarded there for the purpose of having the company execute it. The date of the forwarding was September 27, 1928. It was delivered on September 28, 1928. Directions were given from the Fort Worth office to the real estate agent to have a change in the tenants. Not hearing promptly from them, as he desired, the real estate agent, on the 29th of September, called the office and at that time talked with the president of the company at Fort Worth, and was informed that the papers had been forwarded to Mr. Witliff at Oklahoma City, and that he would bring them down and perfect the deal. A conversation was had with Mr. Witliff, and the real estate agent was informed by him that he would be down in a few days and bring the papers and close up the deal. The agent later discovered that Mr. Witliff had been to Ada, but had not called on him, and later Witliff refused to go on with the deal on account of an attorney making a claim for fees, and the real estate agent was instructed by Witliff to return the purchaser his money. The real estate agent made demand for commission earned, and the plaintiff in error refused to pay it.

Subsequent to that time, a letter was written to the agent by the company on October 18, 1928, to the effect that the Farm & Home Savings & Loan Association had accepted the terms of the Fidelity Company, but this was received after the money had been turned back and the trade had been called off by the purchaser.

It is clear from the testimony that the real estate agent acted on the orders of a main officer of the company in listing the property, and it is very evident that the company itself was endeavoring to get the other company to reduce its claim in order to recoup its losses in selling the property for $2,400, which apparently was all it was worth. It is very evident from this testimony that the agent performed the work. It is very evident that the question of ultra vires and the statute of frauds was an afterthought, and that the failure of the deal was brought about by the company itself, trying to recoup its loss by getting a reduction from the other company that had a lien.

At page 46 of the record, the vice president and general manager, Mr. Witliff, to whom the papers were forwarded for the completion of the deal, testified:

"Q. What steps did you take in relation to the matter after you received notice of this written contract that had been submitted to the corporation? A. When I found out how much money we were getting for it or offering for it, the first thing I did was to find out how much it would take to procure title to have the foreclosure lawsuit dismissed that was filed by the Farm & Home & Loan Association. Q. Explain the conditions of this land at the time and how it came to be in that condition, you have it in your mind and can explain it better than I could get out by

examination— By Mr. Slee: I don't know that that's material, your honor— By the Court: I'll let him answer— By Mr. Slee: Note our exceptions— A. Well, the property in order to get down to the fore-closure—no doubt had changed hands many times, and finally it drifted down to where title was placed with the Fidelity Trust Company."

The indebtedness was $2,353.63 plus taxes. The correspondence between wit-ness and the Farm & Home Loan Associ-ation was in part introduced in shape of a letter written by the vice president and general manager, Mr. Witliff, which is as follows:

"Farm & Home Savings & Loan Ass'n,

"Nevada, Mo.    Attention W. F. Street.

"Gentlemen:

"You have a suit pending in the court at Ada, Okla., foreclosing on lot xx of block 20 Daggs addition. Your stock certificate in this case is No. 83115. While in Ada last week I saw the recent statement that you sent Mr. Finley of Ada under date of October 10th, showing that on the 19th of this month it would take $2,353.63 to take up the entire indebtedness you hold against this piece of property. In addition to this, your attorney, Mr. Cosgrove of Tulsa, has a claim to file for his fee. I have several hundred dollars invested in this piece of property which I am willing to take my loss if you are willing to accept $2,400 in cash, less a 5% commission that will go to the Chadd Realty Company of Ada—which would amount to $120 and would leave you $2,280.

"In other words, if you are willing to close this transaction out by accepting the above, let me know by wire so that I can get busy and have the proper parties make title to the property to the party to whom the Chadd Realty Company is selling it.

"It looks to me that this is a good deal for you.

"Very truly yours,"

That appears to have been written, ac-cording to the statement, after consulting with the board of directors, who were Judge Wehr, Mr. Wallace, and Mr. Nazel, of Oklahoma City. The conversation with the witness, however, was with Judge Wehr alone.

Under the conditions, we do not think that the defense of ultra vires is well taken. The statute of frauds passed out of it in large measure when the agent had com-pleted his services by getting a purchaser, ready, willing, and able to buy the prop-erty. When the commission was refused, the plaintiff had a right to sue the com-pany and recover the amount.

The corporation was a foreign one.

Neither its by-laws, charter, nor laws of the state chartering were introduced or shown. This court, in Pliler v. Thompson, 84 Okla. 200, 202 P. 1016, holds that the employment of an agent to find a buyer can be established by parol. Evidently the offi-cers of the corporation, the president, the secretary-treasurer, and Mr. Witliff, the vice-president and general manager, to whom the purchase contract was sent for final closing, were empowered to act for the corporation, as two of them appear to have been directors. Evidently section 1150, Re-vised Laws 1910, on the subject of estoppel, after receiving benefits of a conveyance or contract, has a place for application here.

The judgment below appears to be just and legal. It is affirmed.

LESTER, C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS and McNEILL, JJ., concur.  CLARK, V. C. J., absent.